NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN YACOVONE,**<br><br>         **Plaintiff,**<br><br>    v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>         **Defendant.** | Civ. No. 13-cv-478(WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiff John Yacovone brings this timely action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision by the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Plaintiff is requesting a remand to the Social Security Commissioner for the taking of additional evidence. 42 U.S.C. § 405(g). For the reasons that follow, the Plaintiff's request for remand is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

**I.      LEGAL STANDARDS**

     **A.     The Five-Step Sequential Analysis**

      Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the

Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

### B. Standard of Review

For the purpose of this appeal, the court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the Administrative Law Judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this court must abide by the ALJ's determinations. *See id.* (*citing* 42 U.S.C. § 405(g)).

## II. JURISDICTIONAL BACKGROUND

Plaintiff John Yacovone initially applied for DIB in 2010 following a shoulder injury. The Commissioner denied the application on April 12, 2010 and again on reconsideration on July 17, 2010. (Administrative Transcript ("Tr.") 11, 48, 57). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On September 19, 2011, the ALJ found that the Plaintiff was not disabled. (Tr. 11-18). On September 27, 2011, Plaintiff requested review of the ALJ's decision by the Appeals Council. (Tr. 6). The Appeals Council denied review. The Appeals Council's denial made the ALJ's decision a "final decision" of the Commissioner, which gives this court jurisdiction over this appeal. *Sims v. Apfel*, 530 U.S. 103, 107 (2000) (*citing* 20 CFR §§ 404.900(a)(4)-(5), 404.955, 404.981, 422.210(a)).

## III. FACTUAL BACKGROUND

Plaintiff argues on appeal that the district court should remand the case to the Commissioner with an order that the Commissioner take "additional evidence." 42 U.S.C. § 405(g). The additional evidence at issue is: (1) records from Plaintiff's internist from July 8, 2010 through September 6, 2011, (2) one medical record from Plaintiff's orthopedist dated October 4, 2011, and (3) records regarding a stroke, psychiatric hospitalization, and broken femur and hip that all occurred in 2013. Plaintiff placed the first two sets of records before the Appeals Council but not the third set. The events documented in the third set of records occurred after the Appeals Council's denial.

### A. Summary of the Record Before the ALJ

Plaintiff's date of birth is May 30, 1967, he has an eleventh grade education, and he has 20 years of experience as a waiter. (Tr. 26-27). He has also worked as a limousine driver. (Tr. 30).

Plaintiff slipped on ice and injured his left, non-dominant shoulder in January 2010. (Tr. 13). Plaintiff had been laid off from his job as a waiter several days prior to the injury. (Tr. 27-28). Since suffering his injury, he took a job driving patients to doctors' appointments, but he had to quit after less than two weeks because the demands of operating the steering wheel and helping patients out of the van caused him too much pain. (Tr. 13, 30).

The medical record before the ALJ was "somewhat limited." (Tr. 15). Plaintiff visited Dr. Jason Baynes on February 2, 2010 complaining of sharp, constant pain in his left shoulder, which had not improved since his fall a few weeks prior. (Tr. 160). Dr. Baynes suspected a torn rotator cuff and sent Plaintiff for an MRI. (Tr. 162).

Following the MRI of February 12, 2010, Plaintiff visited Dr. Baynes on March 19, 2010. (Tr. 193). Plaintiff reported improvement at this time. (*Id.*). While lifting his arm over his head, he reported his pain as 4/10. (*Id.*). Strength of the left shoulder was rated as 4/5. (Tr. 194). Plaintiff was taking Vicodin and aspirin and exercising. (Tr. 193). The doctor noted at this visit that Plaintiff had undergone four weeks of physical therapy and a subacromial injection. (Tr. 194). The doctor noted that Plaintiff was still having symptoms of impingement and weakness "even though the MRI came back negative for a rotator cuff tear." (Tr. 194). The doctor wrote, "I told John that since he has not seen significant improvement and that since his

MRI showed significant bursitis as well as impingement that I would recommend a shoulder arthroscopy with decompression and possible rotator cuff repair." (*Id.*).

Physical therapy notes continued for a few more weeks. On March 23, 2014 they note that "Patient's pain has improved a bit since the other day when it was nearly as bad as a few days after he fell." (Tr. 197).

Physical therapy records end on April 6, 2010. These notes state that the pain "doesn't seem to be getting dramatically better." (Tr. 211). According to Plaintiff's testimony, he could not handle the physical therapy, so Dr. Baynes decided he should have surgery and then return to physical therapy. (Tr. 32). Because Plaintiff's insurance would not cover the surgery, and the hospital demanded the money up front, the surgery could not take place. (Tr. 32-33).

On May 4, 2010, the Plaintiff saw Dr. Kenneth Park. (Tr. 223). He reported left shoulder pain that radiated down the posterior arm to the elbow. Plaintiff reported the pain as 7/10. (Tr. 223). He denied pain radiating down the neck or to the lower arm. (Tr. 225). He was taking Vicodin at night for the pain but denied side effects. (Tr. 225).

At Plaintiff's hearing, he testified that he could not reach under his right arm to wash. (Tr. 29). He complained that shaving was a problem and that it took him two and half hours to get ready to go to the hearing. (Tr. 29). He explained that if he raises his arm slightly less than parallel, or moves it too far to the left or the right, there is a pop, followed by excruciating pain. (Tr. 29-30). He stated that he was seeing an internist, Dr. Sahloul, once a month to get Percocet 10. (Tr. 31-32). He reported taking two Percocets a day, once in the morning and once at night, with Tylenol in between. (Tr. 31). He complained that he had not slept well in 18 months. He said the resulting fatigue is the type "which drives you a little bit crazy because it's constant pain and the throbbing and the limited movement." (Tr. 34). The pain limits his ability to do dishes and the wash because he can only use one arm. (Tr. 35).

The vocational expert testified that a person with Plaintiff's education and experience could find jobs in the national economy, even with the following limitations: (1) The individual could not lift his non-dominant arm higher than parallel to the horizontal to the front and not at all to the side; (2) The person would not be able to perform tasks any greater than simple one- or two-step processes to completion; (3) The person could not drive.[1]  The vocational expert testified that a

---

[1] (1) and (2) are the limitations that the ALJ found to be relevant to Plaintiff's RFC.

4

person with Plaintiff's age, education, and experience and these limitation could work as a telephone quotation clerk, an order clerk, or a document prep worker. (Tr. 37). He testified that these jobs were widespread enough that Plaintiff's inability to drive would not have an effect on their availability, provided Plaintiff could access public transportation. (Tr. 39). The vocational expert testified that if a person had to take off three or more days a month due to the effects of pain or medication side effects, then he would not be able to work in these jobs. (Tr. 38).

### B. The ALJ's Decision

In his opinion of September 19, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 11-18). The ALJ found that Plaintiff had an RFC that permitted him to perform work at all exertional levels, but with the following limitations: "The claimant cannot lift his left arm higher than parallel to the ground while extended forward, and cannot lift his arm to the side . . . [and] due to pain, he cannot perform jobs to completion involving more than 1 to 2-step processes." (Tr. 14).

The ALJ accepted Dr. Baynes's statement that Plaintiff was unable to perform work as a waiter but did not find that Plaintiff was totally disabled. The ALJ accepted that Plaintiff was in pain and fatigued, but he found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the RFC. He noted that Plaintiff's testimony of pain at a level of 9/10 was not consistent with what he told his doctors, which was that his pain ranged from 4/10 to 7/10. The ALJ also found that Plaintiff's daily activities did not credibly establish that he was incapacitated from all work. The ALJ found that the Plaintiff could perform some jobs available in the national economy, namely, the ones that the vocational expert recommended.

### C.   The Appeals Council

Plaintiff requested the Appeals Council conduct a review of the ALJ's decision. (Tr. 6). Plaintiff submitted new evidence to the Appeals Council. (Tr. 4-5). The new evidence before the Appeals Council consisted of 1.) Dr. Sahloul's treatment notes from July 8, 2010 through September 6, 2011, (Tr. 231-52, 253-57) and 2.) Dr. Bayne's October 4, 2011 office visit report, (Tr. 255-256). The Appeals Council denied Plaintiff's request in a decision dated December 14, 2014. (Tr. 1-3).

### D.   Plaintiff's Post-Hearing Stroke and Further Injuries

In his appeal, Plaintiff submits a new volume of medical records for the first time. These records document a stroke that occurred in May 2013, leaving Plaintiff

with expressive aphasia and considerable weakness on the right side of his body. After the stroke, he began to become aggressive towards the staff at the Kessler Institute, and he was transferred to the Bergen Regional Medical Center for psychiatric treatment in September 2013. While at Bergen Regional, Plaintiff suffered a fractured hip and femur and received surgery for those injuries on September 10, 2013.

## IV. DISCUSSION

Plaintiff only makes one argument – that this case should be remanded to the Commissioner for the taking of "new evidence" – namely Dr. Shaloul's records, Dr. Baynes's record of Plaintiff's October 2014 office visit, and the records following Plaintiff's 2013 stroke. Plaintiff's argument is not persuasive.

"If the claimant proffers evidence in the district court that was not previously presented to the ALJ, then the district court may remand to the Commissioner." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). Sentence Six of § 405(g) governs a disposition of remand for the taking of additional evidence. *Id.* Sentence Six states that the court may remand for the Commissioner to take additional evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). In this case, the "prior proceeding" is the ALJ's hearing, not the Appeals Council's denial. *Matthews v. Apfel*, 239 F.3d at 594 (holding that to warrant remand to the Commissioner with instructions to take additional evidence, a plaintiff must show good cause why he failed to submit the evidence to the ALJ, even where the plaintiff submitted evidence for the first time to the Appeals Council).

Moreover, "No statutory provision authorizes the district court to make a decision on the substantial evidence standard based on the new and material evidence never presented to the ALJ." *Matthews v. Apfel*, 239 F.3d at 594. The decision to remand is based solely on consideration of the three elements listed in Sentence Six of § 405(g): newness, materiality, and good cause for Plaintiff's failure to place the evidence on the record in a prior proceeding. *Id.* at 594 (*citing Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)).

"New evidence" is evidence that is "not merely cumulative of what is already in the record." *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). Evidence is "material" if it meets three requirements: (1) It is "relative and probative;" (2) It has a reasonable probability of changing the outcome of the Commissioner's final decision; (3) It relates to the time period for which benefits

6

were denied and does not concern evidence of a later-acquired disability or of subsequent deterioration of the previously non-disabling condition. *Szubak*, 745 F.2d at 833. Finally, the plaintiff seeking remand for consideration of new evidence must show "good cause" for failing to place the new evidence before the ALJ. *Matthews*, 239 F.3d at 594. The policy concern underlying the "good cause" requirement is to encourage claimants to present all relevant evidence to the ALJ. *Matthews*, 239 F.3d at 595. "If we were to order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the ALJ." *Id.* (*citing Szubak*, 745 F.2d at 834).

Dr. Shaloul's records are not "new" or material. Dr. Sahloul's records are not "new" because the records contain cumulative information. They note Plaintiff's complaints of left shoulder pain, diagnoses of rotator cuff syndrome and/or tendonitis of the left shoulder, and recommendation of Percocet for pain. (Tr. 234-48). This information was contained in Plaintiff's testimony and in Dr. Baynes's February 2, 2012 report. (Tr. 27-34, 160-62). Dr. Sahloul's notes are also not material in that they are not reasonably likely to change the Commissioner's decision. The key issue underlying the ALJ's "not disabled" finding was that Plaintiff's complaints about the intensity, persistence, and limiting effect of his pain were not credible to the extent that they were inconsistent with the RFC and objective medical evidence. Notably, Plaintiff complained at the hearing of pain that was 9/10 in intensity, but he had previously told doctors that his pain was 4/10 or 7/10. Dr. Sahloul's notes offer nothing to corroborate Plaintiff's position that the intensity, persistence, and limiting effects of his pain and fatigue render him unable to work. Additionally, Plaintiff offers no good cause explanation for the failure to place Dr. Sahloul's records before the ALJ.

Dr. Baynes's report of October 4, 2011 was based on observations made after the ALJ determined that Plaintiff was not disabled. It does not relate to the time period for which benefits were denied and therefore is not "material." The report also is not material because it is unlikely to change the Commissioner's decision; most of the information in the report is cumulative. Dr. Baynes notes continued shoulder pain, that plaintiff can only lift his arm to about 90 degrees, chronic bursitis, and some loss of strength in the arm. The ALJ already accepted all this information as true. Dr. Baynes additionally recommended that Plaintiff do no work that requires frequent lifting, but the ALJ already took the limitations on lifting into account. The ALJ accepted the vocational expert's testimony that there were jobs in the national economy that Plaintiff had the age, education, and experience to perform and which required no more than occasional reaching. (Tr. 18). Dr. Baynes's report does nothing to undermine the vocational expert's opinion.

The records that Plaintiff submitted to the court involving the unfortunate chain of events beginning with Plaintiff's May 2013 stroke are not material because they clearly do not relate back to the time period for which benefits were denied and concern a later-acquired disability.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's request for a remand with instructions that the Commissioner take additional evidence is **DENIED**. Plaintiff having made no arguments for why substantial evidence did not support the Commissioner's final decision, the final decision of the Commissioner is **AFFIRMED**.

/s/ William J. Martini

_____

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 26, 2014**